NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS and NEW JERSEY CARPENTERS FUNDS and the TRUSTEES THEREOF, | |
| Petitioners, | Civil Action No. 11-903 (JAP) |
| v. | **OPINION** |
| JAYEFF CONSTRUCTION CORP., | |
| Respondent. | |

PISANO, District Judge.

This action is brought by Petitioner New Jersey Regional Council of Carpenters, New Jersey Carpenters Funds and the Trustees Thereof (collectively, "the Funds") against Respondent Jayeff Construction Corporation ("Jayeff"). Presently before the Court is the Funds' Motion to Confirm an arbitration award entered on December 30, 2010 ("Arbitration Award"), and Jayeff's Cross-Motion to Vacate the Arbitration Award. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court denies the Union's motion to confirm, and grants Jayeff's motion to vacate.

**I.    FACTUAL BACKGROUND**

The following facts are undisputed. Jayeff is a commercial construction contracting company that hires subcontractors to work on its projects. It has never signed a statewide collective bargaining agreement (CBA) with the Funds. It has, however, employed members of the carpenters union, and remitted payment of their benefits to the Funds. Between 2003 and

2009, Jayeff remitted fringe benefits for five employees who worked in managerial/supervisory positions, but were members of the Carpenters' Union. The Funds provide standard remittance forms to be included with the payments for each employee. These standard forms include the following statement:

> The Employer hereby acknowledges his or its agreement to the Collective Bargaining Agreement which requires the payment of the fringe benefits forwarded herewith. The Employer further agrees to the Agreements and Declarations of Trust governing the New Jersey Carpenters' Fringe Benefits Funds. Both Collective Bargaining Agreement and the Agreements and Declarations of Trust are hereby incorporated by reference and the Employer agrees to abide by said agreements.

Jayeff's personnel manager signed these forms, which accompanied each payment of fringe benefits for those union employees.

The Funds instigated a payroll compliance audit of Jayeff for the period beginning January 1, 2009 and ending March 31, 2010. On August 16, 2010, the auditor issued a report asserting that Jayeff should have remitted payments for additional non-union employees. On December 8, 2010, the Funds notified Jayeff that it owed the Funds $246,181.67. Jayeff responded that it was not a signatory to the CBA and that, therefore, it did not owe anything. When the Funds indicated its intent to arbitrate the dispute pursuant to a provision in the CBA, Jayeff responded that it could not be compelled to arbitrate because it had not signed the CBA. The arbitration was conducted without Jayeff on December 30, 2010, and the arbitrator determined that Jayeff was bound to a CBA with the New Jersey Council of Regional Carpenters. The arbitrator ordered Jayeff to pay $392,178.71 to the Funds.

The Funds filed this action on February 17, 2011, asking the Court to confirm the Arbitration Award. Jayeff filed an Opposition and a Cross-Motion on March 7, 2011, asking the Court to vacate the Arbitration Award. This dispute turns on whether or not the above-quoted

remittance form is sufficient to bind Jayeff to the entire CBA, including as to its non-union employees.

## II.    LEGAL STANDARD

The Federal Arbitration Act (the "FAA") creates a strong presumption in favor of enforcing arbitration awards. *New Jersey Carpenters Funds v. Professional Furniture Services*, 2009 WL 483849 at *2 (D.N.J. February 25, 2009) (citing *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir. 2005)). Pursuant to the FAA, a district court may vacate an arbitration award only under a limited set of circumstances including: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4).

The general rule is that, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). Thus, if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62 (2000) (citing *Misco*, 484 U.S. at 38). "Neither

a court's disagreement with the arbitrator's construction of a contract nor its belief that its interpretation of a contract is better justifies a court overruling the arbitrator." *Exxon Corp. v. Local Union 877, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 980 F.Supp. 752, 760 (D.N.J. 1997) (citing *News America Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)).

However, it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). The Court, not the Arbitrator, is to decide whether a non-signatory can be bound to an agreement. *Laborers' Int'l Union v. Foster Wheeler Corp.*, 868 F.2d 573, 576 (3d Cir. 1989); *United States SBA v. Chimicles*, 447 F.3d 207, 209 (3d Cir. 2006).

### III.    LEGAL ANALYSIS

As stated above, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation*, 363 U.S. at 582. There is no dispute that Jayeff has never signed the CBA itself. Rather, the Funds argue that Jayeff has bound itself to the CBA by signing the remittance forms accompanying its payments of fringe benefits for a limited number of employees. Jayeff, however, contends that the language on the remittance forms clearly limits their agreement to the terms of the CBA to apply only to those payments submitted with the forms. Jayeff also argues that its personnel manager did not have authority to bind Jayeff to the CBA. Finally, the company advances alternative arguments: that the audit report and arbitrator's judgment lack sufficient detail, and that its dispute with the Funds is not

arbitrable because the union, and not the Funds, is party to the CBA.  The Court need not reach the latter arguments because it finds that the remittance forms do not bind Jayeff to the CBA.

Jayeff's argument that remittance forms are a "written agreement" sufficient to satisfy the requirements of Section 302(a) of the Labor Management Relations Act is irrelevant.  That remittance forms satisfy the requirement of 302(a), which seeks to prevent bribery of unions by employers, is not at issue here.  *See* 29 U.S.C. § 186(c).  Instead, the issue is whether or not remittance forms can serve to bind the employer to the CBA.

Both parties argue that the language on the remittance form is unambiguous.  The Funds argues that it clearly binds Jayeff to the CBA, while Jayeff argues that the agreement is clearly limited to the specific payments submitted with the forms.  The Court does not agree with either party, and finds the disputed clause ambiguous; the extent to which the clause purports to bind the employer is unclear.  However, the context clearly shows that Jayeff had no intent to be bound to the entire CBA as to all of its employees, and that it was reasonable for Jayeff to believe that it was not so bound merely by submitting the standard remittance forms.

First, the Funds' argument that Jayeff put itself forward as bound to the CBA by employing members of the union and by signing the remittance forms is tenuous.  The Court will not go so far as to grant Jayeff's argument that its personnel manager had no authority to bind the company with her signature.  Nevertheless, the fact that she was the signatory, and not someone with broader authority within the company, is a strong signal that an agreement as far-reaching as the entire CBA was not contemplated.  Jayeff also affirmatively indicated its intent not to be bound by the CBA by continuing to employ mainly non-unionized workers, and by remitting payments solely for those few who were union members.  It is unlikely that Jayeff would intend to be bound to the terms of the CBA as to employees who are not even members of the union.

5

Jayeff claims that it only submitted the fringe benefits for its unionized employees "as a favor" to those employees, and that it did not employ them as carpenters, the trade for which they were unionized, but rather in managerial positions. While these claims cannot simply be taken at Jayeff's word, the company's characterization of the intent behind the submittal of these remittance forms is far more believable than the Funds' in view of all the circumstances.

      Second, none of the cases cited by the Funds for the proposition that remittance forms alone are sufficient to bind an employer to a CBA actually support this position. In each of these cases, the remittance forms were only one part of a pattern of behavior—including the signing of other agreements that more directly referred to the CBA—indicating an intent to be bound by the CBA. For example, in *Composition Roofers Union Local No. 30 Welfare Trust Fund v. L.A. Kennedy*, the employer actually had signed the CBA, but claimed that the agreement was invalid. Its signature on the remittance forms was considered additional evidence of its intent to be bound. No. 93-1558, 1996 U.S. Dist. LEXIS 5737, *15 (E.D. Pa. May 1, 1996) ("These contributions must be viewed in the context of the relationship between L.A. Kennedy and the Union Local 30-B. L.A. Kennedy's relationship with the Union Local 30-B began in 1985, more than ten years ago, when L.A. Kennedy executed the 1985 CBA."). Similarly, in *Moriarty v. Brust Funeral Home*, the sole proprietor of the employer had entered into an agreement recognizing the union as the exclusive bargaining agent of its employees, but contested the validity of that agreement. 1995 U.S. Dist. LEXIS 11374, *2-3 (N.D. Ill. Aug. 9, 1995). In *Washington Area Pension Fund v. Mergentime Corp.*, the employer had signed other agreements directly applicable to the disputed payments, in addition to the remittance forms. 743 F. Supp. 422, 427 (D. Md. 1990). In *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, the Ninth Circuit denied a defendant employer's

claim that a prior collective bargaining agreement with the plaintiff union had expired.  753 F.2d 1512 (9th Cir. Ariz. 1985).  Clearly, the employers and the unions in all of these cases had much more extensive contractual relationships than the one at issue here.

Finally, it is well-settled that ambiguous contract language should be construed against the drafter.  *See, e.g.*, *Integrated Health Res., LLC v. Rossi Psychological Group, P.A.*, 537 F. Supp. 2d 672, 676 (D.N.J. 2008) (citing *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995)).  While this doctrine, known as *contra proferentem*, may not apply where the parties are equally sophisticated, *Pacifico v. Pacifico*, 190 N.J. 258, 267-68 (N.J. 2007), the fact that the Funds provided these standardized forms does not militate in its favor.  The terms on this form were certainly not negotiated by the parties.

## IV.    CONCLUSION

For the reasons set forth above, the Court denies the Funds' Motion to Confirm, and grants Jayeff's Motion to Vacate.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: October 11, 2011